Filed 8/11/26  Linson v. Chesney CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PATRICIA LINSON,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KENNETH ARNOLD CHESNEY,<br><br>    Defendant and Respondent. | B342104<br><br>(Los Angeles County<br>Super. Ct. No. 22VECV00301) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Virginia Keeny, Judge.  Affirmed.

Law Offices of C. Randall Plentzas, Randy Plentzas; Law Office of Ronda Baldwin-Kennedy and Ronda Baldwin-Kennedy for Plaintiff and Appellant.

Theodora Oringher, Gregory M. Hatton, and Alice M. Hodsden for Defendant and Respondent.

_____

# INTRODUCTION

Someone impersonating musician and defendant Kenneth Arnold Chesney convinced plaintiff Patricia Linson to lend him (the impersonator) and another defendant, who is not a party to this appeal, over $300,000. When the impersonator and the other defendant failed to repay the loan, Linson sued Chesney and the other defendant.

Linson alleged, among other things, that Chesney likely knew third parties were impersonating him to steal money from others and that he owed her a duty to warn and protect her against such scams. Linson also alleged that an unknown employee of Chesney may have aided and abetted the impersonator by leaking confidential information about Chesney's music business to the impersonator, which the impersonator used to convince Linson that he was Chesney. As a result, Linson claimed Chesney was also liable for her loss under vicarious liability and negligent hiring, supervision, and retention theories. The trial court sustained without leave to amend Chesney's demurrer as to all of Linson's causes of action against Chesney, and dismissed him from the lawsuit.

Linson appeals, arguing the trial court erred in finding Chesney did not owe her a duty to warn or protect her against the impersonator's scam. We conclude the court correctly found Chesney owed Linson no such duty. Because Linson has not otherwise shown the court erred in dismissing any of her claims against Chesney, we affirm.

# BACKGROUND

In February 2021, someone impersonating Chesney contacted Linson. The impersonator told Linson that he was experiencing financial difficulties and needed her to forward him

2

several hundred thousand dollars. The impersonator claimed that he needed the money to appear at a country music awards show, repair damaged instruments, create new music videos, and help finance other aspects of his music business. According to Linson, the impersonator was able to convince her that he was Chesney by revealing details about future tours and releases that were not yet public and that only someone closely connected to Chesney's music business would know.

In April 2021, Linson agreed to loan the impersonator more than $300,000, which the impersonator claimed he would repay within several months. The impersonator asked Linson to send the money to Nayri Apelian, who the impersonator claimed was Chesney's "partner." In total, Linson sent $310,000 to Apelian. Neither the impersonator nor Apelian repaid any of the money.

In June 2024, Linson filed her operative second amended complaint against Chesney, Apelian, and a John Doe defendant because she never discovered the impersonator's identity. Linson asserted 10 causes of action against Chesney: fraud; civil conspiracy; breach of the implied covenant of good faith and fair dealing; promissory estoppel; unjust enrichment; vicarious liability; inadequate warning; negligence; negligent hiring, supervision, or retention; and punitive damages.

Linson's inadequate warning and negligence causes of action are based on allegations that Chesney was aware that third parties were impersonating him and using confidential information about his music business to steal money from his fans. According to Linson, Chesney owed her a duty to warn and protect her against such scams, including by posting warnings about such scams on his website and social media accounts. Had he posted such warnings, Linson claims she would have realized

3

the impersonator was not Chesney and she would not have agreed to loan the impersonator and Apelian money.

Linson's vicarious liability and negligent supervision, hiring, or retention causes of action are based on allegations that an unknown employee of Chesney was the impersonator or leaked confidential information about Chesney's music business to the impersonator that was used to convince Linson that the impersonator was Chesney. According to Linson, Chesney should be held liable for failing to prevent the unknown employee from using confidential information about his music business to help facilitate the underlying scam.

Chesney demurred to Linson's second amended complaint. Among other things, Chesney argued that Linson failed to plead facts showing that he owed her a duty to warn or protect her against third parties using his identity to scam his fans out of money. Chesney also argued that Linson failed to plead any facts showing that it was foreseeable that an unknown employee of his would use information about his music business to defraud Linson or aid and abet a third party in defrauding Linson.

The trial court sustained Chesney's demurrer without leave to amend. Relevant here, the court found that Chesney owed Linson no duty to warn or protect her against third-party scams. As for Linson's claims based on allegations that Chesney was liable for his employee's negligence or intentional misconduct in helping to facilitate the underlying scam, the court found that Linson failed to plead facts that would support a finding that such conduct by one of Chesney's employees was foreseeable. In addition, the court found that Linson failed to plead any facts that would support a finding that Chesney shared a special relationship with his fans such that "they had a right to expect

4

protection from Chesney as a result of the rising [third-party] scams" or that he had a special relationship with the impersonator and Apelian such that he was able to control their conduct.

The court also rejected Linson's request for leave to amend to allege additional facts that would support a finding that "Chesney knew of the fraud being committed in his name and that he failed to prevent it." The court explained, "[w]hen pressed, counsel did not have any actual facts he intended to add that would establish that [the impersonator] or Apelian actually were employed by Chesney, that Chesney had actual knowledge of this particular scam, or that Chesney had any ability to control the activities of the scammers; rather counsel argued that because these types of celebrity scams are on the upswing, Chesney could have placed warnings on his website to alert fans to possible scams. These factual allegations are insufficient to rise to the level of imposing a duty to warn or control on Chesney over the fraudulent actions of third parties. While these scams are indeed unfortunate, to require every famous person to include disclosures on their social media pages that unknown individuals might be impersonating them (and face liability for those scams if they do not), stretches the concept of duty beyond what is supported by common sense and sound public policy."

The trial court dismissed Linson's action against Chesney with prejudice. Linson appeals.

## DISCUSSION

### 1. Standard of review

We independently review a trial court's order sustaining a demurrer to determine whether the operative complaint alleges facts sufficient to state a cause of action. (*Ivanoff v. Bank of*

5

*America, N.A.* (2017) 9 Cal.App.5th 719, 725.)  We assume the truth of all properly pled factual allegations and matters that are judicially noticeable, and liberally construe the complaint's allegations with a view toward substantial justice.  (*Ibid*.; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7.)

If the trial court sustained the demurrer without leave to amend, we must decide whether there is a reasonable possibility that the plaintiff can amend her complaint to cure the defect. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  If the defect can be cured, the trial court has abused its discretion, and we reverse. (*Ibid*.)  If the defect cannot be cured, the trial court has not abused its discretion, and we affirm.  (*Ibid*.)  The plaintiff bears the burden of showing there is a reasonable possibility that the defect can be cured.  (*Ibid*.)  The plaintiff can make that showing for the first time on appeal.  (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)

## 2. Duty to warn or protect against third-party misconduct

Linson contends the trial court erred when it dismissed her claims against Chesney because she adequately pled facts to support a finding that he owed her a duty to warn or protect against scams that he knew were perpetrated by third-party impersonators.  As we explain, this argument lacks merit.

"[N]ot every defendant owes every plaintiff a duty of care." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).) The law typically "imposes a general duty of care on a defendant only when it is the defendant who has ' "created a risk" ' of harm to the plaintiff, including when ' "the defendant is responsible for making the plaintiff's position worse." ' " (*Id*. at p. 214.)  One

6

generally owes no duty " ' "to control the conduct of another, nor to warn those endangered by such conduct." ' " (*Ibid*.)  Whether a duty exists is a question of law for courts to decide.  (*Id*. at p. 213.)

Linson acknowledges that no authority imposes a duty on celebrities to protect others from scams perpetrated entirely by third parties, even when celebrities are aware that third parties have used the celebrities' identities to steal money from others.  Nevertheless, Linson urges us to create such a duty here.  For the reasons expressed below, we decline to do so.

In *Brown*, the California Supreme Court established a two-step inquiry for courts to use when deciding whether to impose upon a defendant a "legal duty to take action to protect [a] plaintiff from injuries caused by a third party."  (*Brown*, *supra*, 11 Cal.5th at p. 209.)  First, courts "must determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect.  Second, if so, [courts] must consult the factors described in *Rowland* [*v. Christian* (1968) 69 Cal.2d 108] to determine whether relevant policy considerations counsel limiting that duty."  (*Ibid*.)

Linson does not allege any facts, or cite any authority, that would support a finding that celebrities share a special relationship with their fans, such as a fiduciary relationship (see *Harding v. Lifetime Financial, Inc.* (2025) 109 Cal.App.5th 753, 764 (*Harding*)), or a special relationship with their impersonators, such as one that would entitle celebrities to control their impersonators' conduct (see *Brown*, *supra*, 11 Cal.5th at p. 216).  Indeed, Linson concedes that "whether or

7

not there is a special relationship between Chesney and any of the parties involved [in this case] is admittedly tenuous at best."

Instead, Linson argues that "some other set of circumstances" exists to warrant imposing upon celebrities a duty to warn their fans and the public about scams perpetrated by third-party impersonators. (See *Brown*, *supra*, 11 Cal.5th at p. 209.) Specifically, Linson argues that third-party scams centered around celebrity impersonations have become so prevalent that they should be considered an "epidemic," and the only way to curb this epidemic is to create a new duty requiring celebrities who are aware of such scams to protect their fans by posting warnings on their websites and social media accounts.

To support this argument, Linson relies on anecdotes of celebrities and companies warning the public about third-party scams or enacting measures to protect the public from third-party misconduct. For instance, Linson claims that other famous musicians have placed warnings on their websites and social media accounts notifying fans that third parties were impersonating those celebrities in attempts to steal money from their fans. Linson also cites and discusses news articles detailing the rise of scams perpetrated by people impersonating celebrities, government officials, and business people.

Linson cites no authority, and we are aware of none, that required the celebrities in the anecdotes and news articles that she relies on to enact prophylactic measures to protect the public from third-party misconduct. Nor does Linson cite any authority that supports the proposition that because some celebrities have voluntarily undertaken measures to protect the public from third-party impersonators, that all celebrities who are aware of such scams must undertake similar measures.

Linson attempts to analogize the facts of this case to a line of decisions that have held that landlords owe a duty to protect their tenants and patrons from third-party criminal conduct occurring on their land. (See, e.g., *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674–680 [listing cases].) Linson's reliance on these cases is misplaced. It is well settled that landlords and businesses share special relationships with their tenants, patrons, and invited guests that may support a duty to protect against foreseeable risks, including those caused by third parties. (See *Regents of Univ. of California v. Superior Ct.* (2018) 4 Cal.5th 607, 620.) As we already explained, Linson alleges no facts, and cites no authority, to support a finding that celebrities share special relationships with their fans to support imposing a duty on celebrities that would require them to protect their fans from third-party misconduct.

In the absence of any authority supporting the creation of a new legal duty that would require celebrities to warn and protect their fans against third-party imposter scams, we decline to create such a duty here. (See *Harding*, *supra*, 109 Cal.App.5th at p. 764.) While we do not doubt that financial scams are becoming more sophisticated and prevalent as technological developments make it easier for people to impersonate others, the trial court aptly observed that it would "stretch[] the concept of duty beyond what is supported by common sense and sound public policy" to require celebrities to post warnings about third-party scams on their websites and social media accounts lest they face liability for such scams.

Finally, Linson contends that she alleged sufficient facts to support a theory that Chesney negligently contributed to her injuries by maintaining a website and social media account

9

through which he engages with fans and sells products. Linson argues that because the impersonator was able to use information that he allegedly learned from Chesney's social media account and website to convince Linson that he was really Chesney, and because Linson relied on Chesney's website and social media account to convince herself that the impersonator was really Chesney, Chesney increased the risk that Linson would be harmed by the impersonator's scam by maintaining his website and social media account.  (See *Brown*, *supra*, 11 Cal.5th at p. 214.)  In essence, Linson rephrases her argument that we impose a duty on celebrities requiring them to protect their fans from third parties who use information about the celebrities to defraud fans.  For the same reasons discussed above, we reject this argument.

### 3.    Employer liability

Linson next contends the trial court erred when it dismissed her claims for vicarious liability and negligent supervision, which are based on a theory that an unknown employee of Chesney likely leaked to the impersonator confidential information about Chesney's music business, which the impersonator used to convince Linson that he was Chesney. Linson has not shown the court erred in dismissing these claims.

We presume a challenged order or judgment is correct. (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799.)  To overcome this presumption, the appellant must provide reasoned argument and legal authority to support his contentions.  (*Ibid*.)  An appellant generally waives any issues that she does not adequately brief.  (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538.)

10

Here, Linson asserts that she adequately pled her vicarious liability and negligent supervision claims. Even if she failed to adequately plead these claims, Linson contends, the court should have granted her leave to amend her complaint because she could have unearthed more facts relevant to those claims through discovery.

Linson does not, however, discuss the elements of either claim or cite any authority that explains how a plaintiff can prevail on either claim. Indeed, while Linson generally discusses the factual allegations relevant to these claims, she does not explain how those allegations would satisfy any of the elements of a vicarious liability or negligent supervision claim. Nor does she explain how any facts she could learn through discovery would satisfy the elements of either claim.

It is not our role "to construct theories or arguments to undermine the judgment and defeat the presumption of correctness." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) By failing to provide reasoned argument with citations to pertinent legal authority, Linson has failed to show that the court erred in dismissing her claims for vicarious liability and negligent supervision.

11

## DISPOSITION

The judgment is affirmed.  Chesney shall recover his costs on appeal.



VIRAMONTES, J.


WE CONCUR:



STRATTON, P. J.



WILEY, J.